IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Nos. 3:18-CR-61-HBG |
| | ) | 3:18-PO-53-HBG |
| JOHN WILLIAM HANSON, III, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

Defendant Hanson has consented [Doc. 8] to the undersigned presiding over his misdemeanor case, Case No. 3:18-CR-61.[1]  18 U.S.C. § 3401(a)-(b); 28 U.S.C. § 636(a)(5). Additionally, the Court previously granted [Doc. 11] the Defendant's request to have his petty offense violations in Case No. 3:18-PO-53 tried at the same time as his misdemeanor case.  The parties came before the Court on August 6, 2018, for a pretrial conference and motion hearing on the Defendant's Amended Motion to Dismiss [Doc. 12] and Amended Motion to Suppress [Doc. 13],[2] both filed on July 17, 2018.  Assistant United States Attorney LaToyia T. Carpenter appeared on behalf of the Government.  Attorney Mark E. Brown represented the Defendant.  Defendant Hanson did not attend the hearing.

---

[1] All citations to the record are to Defendant Hanson's criminal case, 3:18-CR-61, unless otherwise noted.

[2] On June 25, 2018, Defendant Hanson filed a *pro se* motion to dismiss [Doc. 2] in his criminal case.  At a hearing the following day, the Court appointed/substituted [Doc. 6] Attorney Mark E. Brown to represent the Defendant in both his criminal case and his petty offense case.  Defendant filed the instant amended motions through counsel.  The Amended Motion to Dismiss [Doc. 12, p.1, n.1] states that counsel has reviewed and discussed the *pro se* motion with Defendant and is advancing the viable issues raised therein.  The Court finds that the Amended Motion to Dismiss [Doc. 12] replaces the Defendant's *pro se* motion.  Accordingly, the Defendant's *pro se* motion [**Doc. 2**] is **DENIED as moot**.

1

The Defendant asks the Court to dismiss the Information because it was not filed within thirty (30) days of his February 3, 2018 arrest, as required by the Speedy Trial Act, 18 U.S.C. § 3161(b). The Defendant also contends that the Court must suppress all evidence seized during a search of his backpack, pursuant to a search warrant, because the affidavit in support of the search warrant fails to provide probable cause or sufficient particularity. After a review of the parties' filings and arguments, along with the relevant law, the Court finds no basis to dismiss the Information or to suppress evidence. For the reasons discussed herein, the Defendant's motions will be denied.

## I.      BACKGROUND

This case arose from events occurring on February 3, 2018, on the Abrams Creek Falls Trail in the Great Smoky Mountains National Park. According to the probable cause statements contained within the petty offense violation notices [Doc. 19],[3] a park volunteer allegedly encountered a white male hiking on the Abrams Creek Falls Trail with two unleashed dogs. According to the violation notices, the volunteer radioed a park ranger, when the white male rebuffed the volunteer's efforts to address the matter of his dogs being off leash and continued on the trail. Ranger Leszek Kwiatkowski hiked to Abrams Creek Falls, where he observed a male, later identified as the Defendant, with two unleashed dogs. The Defendant was standing by a fire at the base of a tree, near the falls. One of the dogs had a leash attached

---

[3] The Government filed copies of six violation notices, charging Defendant Hanson with the following petty offenses, occurring on February 3, 2018: Pet in a Closed Area (TE41 7332759), Unrestrained Pet (TE41 7332760), Fire in a Closed Area (TE41 7332761), Interfering with Agency Functions—Lawful Order (TE41 7332763), Interfering with Agency Function—Providing False Information (TE41 7332764), and Possession of a Controlled Substance (TE41 7332765). The Court takes its summary of background events giving rise to the charges from the probable cause statements in these violation notices. The probable cause statements are law enforcement's allegations of what occurred. Accordingly, the Court makes no factual findings based upon these allegations.

to its collar, but no one was holding the leash. The other dog had no leash. According to the probable cause statements, upon seeing the ranger, the Defendant attempted to put out the fire, grabbed his backpack, and began walking away from the ranger.

The violation notices state that Ranger Kwiatkowski made contact with the Defendant and asked him to put his backpack down, after noticing a seven-inch fixed-blade knife strapped to it. The Defendant complied and also sat down at the ranger's direction. Ranger Kwiatkowski asked about the fire and informed the Defendant that unrestrained dogs are not permitted on the trail. According to the violation notices, the Defendant denied setting the fire and told the ranger that one of his dogs' leashes had broken. Ranger Kwiatkowski asked for the Defendant's identification, which the Defendant said was in his vehicle at the trailhead. The Defendant identified himself as John William Strandberg and his date of birth as November 16, 1990.

The probable cause statements further relate that despite Ranger Kwiatkowski telling Defendant Hanson to leave his backpack alone several times, the Defendant stood up, grabbed his backpack, and started to walk away. Ranger Kwiatkowski pushed the Defendant down on top of his backpack, then pulled him into a standing position, while preventing his access to the backpack. Ranger Kwiatkowski and Ranger Dylan Jones escorted the Defendant toward the trailhead.

According to the violation notices, when the three were within three hundred yards of the trailhead, Ranger Kwiatkowski told Ranger Jones that he would be arresting the Defendant. The rangers then each grasped one of Defendant Hanson's arms. Ranger Kwiatkowski told the Defendant that he was under arrest and to put his hands behind his back. After a thirty-second struggle, the Defendant broke free from the rangers and fled toward the

parking lot. Ranger Kwiatkowski yelled multiple times that the Defendant was under arrest and for him to get on the ground, as the Defendant fled for approximately three and one-half minutes. Ranger Jones deployed his TASER, and the Defendant fell to the ground. The rangers held the Defendant down, while giving him multiple commands to place his hands behind his back. The Defendant did not comply, and the rangers stunned him with the TASER five more times, before successfully handcuffing him.

The violation notices relate that after arresting the Defendant, the rangers inventoried his vehicle. The rangers located the Defendant's driver's license in his vehicle and learned that his name is John William Hanson, III, and his date of birth is November 16, 1988. In the Defendant's vehicle, Ranger Jones found a plastic wrapper containing a toothpick and a substance Ranger Kwiatkowski believed to be hash oil. The rangers also located an unmarked blue glass bottle with a dropper, which contained an opaque fluid. The rangers sent the bottle to the Tennessee Bureau of Investigation for testing.

On February 6, 2018, the Defendant appeared before the undersigned on the violation notices. The Court appointed Assistant Federal Defender Jonathan A. Moffatt and the Federal Defender Services of Eastern Tennessee to represent the Defendant and directed the Defendant to appear on February 22, 2018, for a status conference on his case. On February 9, 2018, the undersigned issued a search warrant[4] for the Defendant's Oakley backpack. A return, also dated February 9, 2018, states that the backpack contained 3.3 grams of a "green leafy substance."

---

[4] The search warrant, the affidavit in support of the search warrant, and the return were not submitted as exhibits in this case. However, these documents are docketed in a related case, 3:18-MJ-2011.

On May 9, 2018, the Government brought a two-count Information [Doc. 1], charging Defendant Hanson with resisting, opposing, impeding, and interfering with a federal officer, in the performance of that officer's duties (Count One) and with possession of five (5) grams of marijuana in the Great Smoky Mountains National Park (Count Two). Both offenses are alleged to have occurred on February 3, 2018.

## II. ANALYSIS

The Defendant argues that the Information in this case violates his rights under the Speedy Trial Act, because it was brought more than thirty days after his arrest on February 3, 2018. He also argues that his backpack was searched in violation of the Fourth Amendment, because it was searched pursuant to an invalid search warrant, which he contends was not supported by probable cause and was not sufficiently particular. The Court examines each of these arguments in turn.

### A. Timeliness of Information

The Speedy Trial Act provides, in pertinent part, that "[a]ny information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which the individual was arrested or served with a summons in connection with such charges." 18 U.S.C. § 3161(b). The Defendant argues that he was charged by Information on May 9, 2018, which is more than thirty days after his arrest on February 3, 2018, for the same offenses. With regard to Count One, which charges the Defendant with acting to resist or impede a federal officer in the performance of his duties, Defendant Hanson contends that this offense is essentially the same as violation notice TE41 7332763, which alleges interference with agency function for refusal to comply with a lawful order. The Defendant argues that the charge in Count Two of the Information, which alleges

that he possessed a controlled substance on February 3, 2018, is the same charge as violation notice TE41 7332765, which also alleges possession of a controlled substance. The Defendant concludes that the Information must be dismissed because it was not brought within thirty days of his February 3, 2018 arrest on essentially the same charges.

The Government argues that the Information is valid and comports with the Speedy Trial Act. It contends that the Speedy Trial Act does not apply to petty offenses. It asserts that, instead, the thirty-day provision in 18 U.S.C. § 3161(b) relates to an arrest stemming from a criminal complaint. Second, it maintains that the charges in the Information are different from the petty offenses charged on February 3, 2018, and were brought after a reasonable investigation.

The Speedy Trial Act does not apply to the petty offenses charged in this case. The Act defines "offense" as "any Federal criminal offense which is in violation of any Act of Congress and is triable by any court established by Act of Congress (other than a Class B or C misdemeanor or an infraction, or an offense triable by court-martial, military commission, provost court, or other military tribunal). 18 U.S.C. § 3172(2). The violation notices issued on February 3, 2018, charge Defendant Hanson with six Class B misdemeanors.[5] *See* 18 U.S.C. § 1865(a) (proscribing a term of imprisonment of up to six months for violation of

---

[5]In the violation notices, Defendant Hanson is charged with violating 36 C.F.R. § 2.15(a)(1) (prohibiting the possession of a pet in an area closed to pets), 36 C.F.R. § 2.15(a)(2) (prohibiting the failure to restrain a pet on a leash or in a container at all times), 36 C.F.R. § 2.13(a)(1) (prohibiting lighting a fire, except in designated areas), 36 C.F.R. § 2.32(a)(2) (prohibiting violating the lawful order of a government employee authorized to perform law enforcement actions), 36 C.F.R. § 2.32(a)(3) (prohibiting the knowing provision of false information in order to mislead a government employee in the performance of official duties), and 36 C.F.R. § 2.35(b)(2) (prohibiting the possession of a controlled substance without a valid prescription or order). These charged regulations are from part 2 of Title 36, relating to resource protection, public use, and recreation in the National Park Service. *See* 36 C.F.R. § 1.3 (providing that penalties for violations of part 2 are governed by 18 U.S.C. § 1865).

regulations relating to the use and management of a national park); 18 U.S.C. § 3559(a)(7)[6] (classifying offenses not designated by letter grade). Thus, the Speedy Trial Act does not apply to the violation notices. *See United States v. Moncier*, 492 F. App'x 507, 510 (6th Cir. 2012) (holding that "Class B misdemeanors are excluded from the Speedy Trial Act"); *United States v. Lee*, No. 3:07–CR–121, 2010 WL 1425057, *3 (E.D. Tenn. Apr. 8, 2010) (holding that the defendant's charge of failure to comply with the directions of a traffic control device in a national park was a Class B misdemeanor and, as such, the Speedy Trial Act did not apply).

The Defendant argues that even though petty offenses are not "offenses" as that term is used in the Speedy Trial Act, they are still "charges" within the meaning of § 3161(b), which requires that an information must be brought within thirty days of an arrest "in connection with such charges." The Court of Appeals for the Sixth Circuit has held, however, that § 3161(b) applies only to an arrest in conjunction with or immediately followed by a criminal complaint. *United States v. Graef*, 31 F.3d 362, 363-64 (6th Cir. 1994). In *Graef*, the defendant was arrested and subsequently given a violation notice for driving under the influence ("DUI"), second offense,[7] after crashing through a gate and into an air national guard base. *Id.* at 363. The violation notice was later dismissed because DUI, second offense, is "punishable by up to a year in prison, is not a 'petty offense,' and cannot be prosecuted by a 'violation notice.'" *Id.* Approximately six months from the defendant's arrest and two months after the dismissal of the violation notice, the government filed an information charging Graef with DUI and stating that an enhanced penalty applied because it was his second offense. *Id.*

---

[6] "An offense that is not specifically classified by a letter grade in the section defining it," is a Class B misdemeanor if the maximum penalty authorized by law is "six months or less but more than thirty days[.]" 18 U.S.C. § 3559(a)(7).

[7] The opinion relates that the violation notice stated it was defendant's third offense, which was not factually correct. *Graef*, 31 F.3d at 363.

Like Defendant Hanson, Graef moved to dismiss the information, arguing that "the 180-day delay between his arrest on June 18 and the filing of the information on December 16 violated the thirty-day provision of 18 U.S.C. § 3161(b)[.]" *Id.*

While the appellate court agreed that Graef was arrested within the meaning of § 3161(b) and that his arrest was "'in connection with'" the same conduct (DUI) charged in the information, the court held that the Speedy Trial Act only provides for dismissal of the charge, if a criminal complaint triggers or immediately follows the arrest. *Id.* at 363-64. The court observed that § 3162(a)(1), which provides the remedy for a violation of the thirty-day period in § 3161(b), states as follows:

> "If, in the case of any individual *against whom a complaint is filed* charging such individual with an offense, no indictment or information is filed within the time limit required by section 3161(b) . . . such charge against that individual *contained in such complaint* shall be dismissed or otherwise dropped."

*Graef*, 31 F.3d at 363-64 (quoting 18 U.S.C. § 3162(a)(1)) (emphasis in *Graef*). The court held that the lack of a remedy for a delay exceeding thirty days following an arrest with no criminal complaint "has led courts unanimously to conclude that the arrest 'trigger' for § 3161(b) applies only to arrests made either on a complaint or which were immediately followed by a complaint." *Id.* at 364. Thus, our appellate court concluded that "because no complaint was ever filed against Graef, there could be no 'arrest' for purposes of beginning the 30–day pre-indictment clock." *Id.* (also holding that the violation notice was not a "summons" triggering § 3161(b)).

The Court finds that the holding in *Graef* controls the determination of the instant motion to dismiss. Like in *Graef*, Defendant Hanson's arrest was followed by the issuance of violation notices, not a criminal complaint. Like in *Graef*, the instant information was filed

more than thirty days from the Defendant's arrest.  In *Graef*, the conduct leading to the defendant's arrest was the same conduct that formed the basis for the information.  Defendant Hanson argues that the conduct for which he was arrested on February 3, 2018, is the same conduct that forms the basis for the two counts in the instant Information.[8]  Accordingly, even accepting the Defendant's argument that his arrest on February 3, 2018, was for the same conduct with which he is charged in the Information, § 3161(b) does not apply, because no criminal complaint was filed in connection with the Defendant's arrest.  Like the Sixth Circuit in *Graef*, the Court holds that the arrest trigger in § 3161(b) refers to an arrest in conjunction with a criminal complaint; and therefore, a complaint is a prerequisite to invoking the thirty-day period as a basis for dismissal of the Information.  *Id.* at 364.

Citing to the First, Fifth, Seventh, and Ninth Circuits, the Defendant argues that the violation of the thirty-day period in § 3161(b) requires dismissal of both counts in the Information, because Counts One and Two are merely "gilded" versions of TE41 7332763 and TE41 7332765.  However, the bulk of the cases upon which the Defendant relies involve an initial arrest in conjunction with a criminal complaint.  *United States v. Giwa*, 831 F.2d 538, 543 (5th Cir. 1987) (holding that the "gilding exception" did not apply because the credit card fraud charges in the criminal complaint are separate, distinct, and require proof of different

---

[8] The Government argues that the Information is based upon different conduct than that charged in violation notices TE 73322763 (interfering with agency function—lawful order) and TE 73322765 (possession of a controlled substance).  For purposes of determining whether a violation of the Speedy Trial Act has occurred, the undersigned need not determine whether Counts One and Two of the Information relate to different conduct or the same conduct as these violation notices.  Even if the same conduct is charged in both the violation notices and the Information, § 3161(b) does not apply in the absence of a criminal complaint.  The Court also makes no finding with regard to whether convictions for both counts in the Information must merge with convictions on violation notices TE 73322763 and TE 73322765.  This latter issue is best determined within the context of the trial.

elements than the mail fraud charges in the indictment); *see also United States v. Palomba*, 31 F.3d 1456, 1464 (9th Cir. 1994); *United States v. Velasquez*, 890 F.2d 717, 719 (5th Cir. 1989); *United States v. Pollock*, 726 F.2d 1456, 1462 (9th Cir. 1984). For this reason, these cases, like § 3161(b), are not applicable to the instant case.

Only two of the cases cited by the Defendant do not involve an initial arrest in conjunction with a criminal complaint. *See Acha v. United States,* 910 F.2d 28, 30-32 (1st Cir. 1990) (examining whether defendant's arrest for violating conditions of release and subsequent indictment for failure to appear seventy-seven days later violate § 3161(b) of the Speedy Trial Act); *United States v. DeTienne*, 468 F.2d 151 (7th Cir. 1972) (analyzing whether defendants' arrest on state charges and a federal arrest warrant for unlawful flight fourteen months before their federal indictment constitutes preindictment delay in violation of the Sixth Amendment right to a speedy trial). In *Acha*, the First Circuit rejected the defendant's argument that his subsequent indictment for failure to appear was merely a gilded version of his earlier arrest for violation of his conditions of release. 910 F.2d at 31. Instead, the court held that the Speedy Trial Act does not apply to an arrest for violation of conditions of release: "[T]he authorities relied on by [defendant], dealing with situations where a defendant has not yet been convicted but is arrested on one charge and later indicted for a similar charge, are inapposite to situations like [defendant's] where a prior conviction provides the basis for arrest." *Id.* at 31. The Court finds that *Acha* undermines, rather than supports, the Defendant's position.

In *DeTienne*, the defendants argued that they were denied their Sixth Amendment right to a speedy trial based upon preindictment delay. 468 F.2d at 154. In October 1968, the defendants were arrested on state charges. *Id.* At the time of their arrests, both defendants also had federal arrest warrants for unlawful flight to avoid confinement, which were issued at

the request of the state prosecutor and which were dismissed within a few days after their arrests. *Id.* at 154-55. Fourteen months later, the defendants were indicted in federal court for attempted bank robbery. *Id.* The defendants argued that the court should "measure 'delay' for Sixth Amendment purposes from the time of their arrests in October 1968." *Id.* at 155. The court declined to do so, opining that although Sixth Amendment protections can attach upon arrest, "[i]t would be absurd in the extreme if an arrest on one charge triggered the Sixth Amendment's speedy trial protection as to prosecutions for any other chargeable offenses." *Id.* The Seventh Circuit recognized an exception when "the crimes for which a defendant is ultimately prosecuted really only gild the charge underlying his initial arrest and the different accusatorial dates between them are not reasonably explicable[.]" *Id.* In such cases, "the initial arrest may well mark the speedy trial provision's applicability as to prosecution for all the interrelated offenses." *Id.* The court ruled that the gilded theory exception did not apply to the defendants before it, because they were not "'accused' for Sixth Amendment purposes on the occurrence of their unrelated October 1968 arrests."

The Court finds that the "gilding exception" is unavailing in this case as well. First, as discussed above, the Court finds no violation of the Speedy Trial Act, because § 3161(b) does not apply in the absence of a criminal complaint. To the extent that the Defendant seeks to argue that the three-month delay between his February 3, 2018 arrest for Class B misdemeanors and the May 5, 2018 Information violates his Sixth Amendment right to a speedy trial, as opposed to the Speedy Trial Act, the Court observes that the Information was brought within three months of his arrest and well within the five-year statute of limitations.

*See* 18 U.S.C. § 3282.[9]  The statute of limitations is the primary standard by which the Court measures whether pretrial delay violates the Sixth Amendment right to a speedy trial.  *United States v. Marion*, 404 U.S. 307, 322-23 (1971).  Accordingly, the Court finds no violation of the Sixth Amendment right to a speedy trial in the instant case.

In summary, the Court finds that 18 U.S.C. § 3161(b) does not apply in this case, because the Defendant's February 3, 2018 arrest was not made in conjunction with a criminal complaint.  Moreover, the Court finds no violation of the Defendant's Sixth Amendment right to a speedy trial based upon the three-month period between his arrest and the filing of the Information.  Accordingly, the Defendant's Amended Motion to Dismiss [**Doc. 12**] is **DENIED**.

### B.  Sufficiency of Search Warrant

The Fourth Amendment protects the right to be free from unreasonable searches and seizures.  In this respect, a judge shall not issue a warrant for the search of a home or personal property, except upon a finding of "probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. Const. amend. IV.  On February 9, 2018, law enforcement officers searched the Defendant's backpack pursuant to a search warrant.  Defendant Hanson contends his rights under the Fourth Amendment were violated by the issuance of that search warrant.  The Defendant argues that the undersigned United States Magistrate Judge lacked probable cause to issue the search warrant because the affidavit fails to show any nexus between the backpack and the criminal activity alleged.  The Defendant also argues that the search warrant was not sufficiently particular, because

---

[9] "Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed."  18 U.S.C. § 3282.

it permitted the seizure of controlled substances generally, rather that limiting the search to marijuana. The Court determines whether the search warrant is supported by probable cause and whether it is sufficiently particular by looking exclusively to the information provided within the four corners of the search warrant affidavit.

### (1) Probable Cause

The Defendant contends that the affidavit supporting the issuance of the search warrant fails to provide probable cause for the warrant to issue. He maintains that probable cause is lacking because the affidavit does not show a nexus between the backpack and criminal activity.

As set out above, the Fourth Amendment requires probable cause for the issuance of a search warrant. Probable cause to search is "a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). To make such a showing "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Id.* at 244, n.13. Thus, the Supreme Court has observed that

> probable cause is a flexible, common sense standard. It merely requires that the facts available to the officer would "warrant a man of reasonable caution in the belief," *Carroll v. United States*, 267 U.S. 132, 162, . . . (1925), that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false. A "practical, nontechnical" probability that incriminating evidence is involved is all that is required. *Brinegar v. United States*, 338 U.S. 160, 176, . . . (1949).

*Texas v. Brown*, 460 U.S. 730, 742 (1983). In other words, probable cause is "reasonable grounds for belief supported by less than prima facie proof but more than mere suspicion." *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990). Whether probable cause to issue a search warrant exists is evaluated by looking at the totality of the circumstances. *Gates*, 462 U.S. at 238.

The issuing authority's determination that probable cause exists is entitled to "'great deference.'" *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000) (quoting *Gates*, 462 U.S. at 236). This deferential standard promotes the preference for the use of search warrants as opposed to warrantless searches. *Id.* "The task of the issuing magistrate is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238. The "duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." *Id.* at 238-39. In making this determination, the Court considers only the information that was before the issuing judge–in other words, only what is contained within the four corners of the supporting affidavit. *United States v. Hatcher*, 473 F.2d 321, 323 (6th Cir. 1973); *see also Whiteley v. Warden*, 401 U.S. 560, 565 (1971).

The Defendant argues that the search warrant affidavit fails to provide a nexus between his backpack and any criminal activity, particularly possession of a controlled substance. He argues that Ranger Kwiatkowski, the affiant, did not find a controlled substance on the Defendant's person at the time of his arrest, nor was the Defendant arrested for possession of a controlled substance. Instead, the Defendant contends that the sole basis that Ranger Kwaitkowski gives for suspecting that controlled substances will be in the Defendant's backpack is the Defendant's understandably nervous demeanor and his reluctance to permit the ranger to retrieve items from his backpack. He argues that this "hunch" on the part of the ranger amounts to "pure speculation" that the backpack contained evidence of a controlled substance. Moreover, he asserts that nervous behavior is, by itself, an insufficient indicator that the backpack would contain contraband.

The Government maintains that the affidavit provides particularized facts showing a clear nexus between the Defendant's backpack and the possession of a controlled substance. It contends that Ranger Kwiatkowski's affidavit contains facts showing that he reasonably suspected the Defendant was using drugs and also that the Defendant was behaving suspiciously toward the backpack. It argues that these facts combined with the reasonable inferences that may be drawn from the affidavit provide probable cause to believe that the backpack contained evidence of controlled substances.

An affidavit offered in support of a search warrant "must indicate a nexus between the place to be searched and the evidence sought and this nexus may be established by the nature of the items and normal inferences of where a person would keep such items." *United States v. Hawkins*, 278 F. App'x 629, 634 (6th Cir.), *cert. denied* 555 U.S. 1019 (2008). In other words, the affidavit must "set forth sufficient facts that incriminating evidence would be found *there* [at the location to be searched], rather than in some other place." *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004). The facts establishing nexus must be "specific and concrete and not 'vague or 'generalized.'" *United States v. Brown*, 828 F.3d 375, 382 (6th Cir. 2016) (quoting *Carpenter*, 360 F.3d at 595).

The instant search warrant authorizes the officer to search for and seize evidence of the crimes listed in Attachment B. Attachment B permits the seizure of the following:

1. Any evidence of controlled substances held in violation of 36 CFR 2.35(b)(2), 21 U.S.C. §§ 841 and 846.

2. Any evidence of violation of 36 CFR 2.13(a)(1), such as: fire starter, lighters, starter fluid.

3. Any weapon in violation of 36 CFR 2.4(b)(3)(g).

[Case No. 3:18-MJ-2011-HBG, Doc. 3, p.4]. Sections 841 and 846, as well as regulation 26 C.F.R. § 2.35(b)(2), prohibit the possession (or the attempt or conspiracy to possess) controlled substances without a valid prescription.

The Court finds that Ranger Kwiakowski's affidavit states specific and concrete facts, providing probable cause to believe that evidence of the illegal possession of a controlled substance would be found within the backpack. First, the affidavit states that during an inventory search of the Defendant's car, following his arrest, Ranger Kwaitkowski found hash oil, an unknown opaque liquid in a bottle with a dropper, a waterproof bag containing the strong odor of marijuana, and an alcohol preparation pad like that typically used for injections. [Aff. at ¶15][10] This evidence supports an inference that the Defendant used controlled substances.

Second, the affidavit contains evidence that allows the Court to infer that the Defendant had *recently* used controlled substances at the time he encountered Ranger Kwaitkowski and at the time of his arrest. The affidavit relates that when Ranger Kwaitkowski first encountered the Defendant at the falls, the Defendant was shaking, had a lot of energy, would not follow the ranger's commands to control his movements, and had been swimming in near freezing temperatures. [Aff. at ¶9-10]. Throughout the encounter at the falls, Ranger Kwaitkowski observed the Defendant was breathing heavily and seemed nervous. [Aff. at ¶7, 10 ] Defendant continued to hike at a "very fast" "jogging" pace on the way to the trailhead, despite Ranger Kwaitkowski's repeated instructions to slow down. [Aff. at ¶11] When the rangers attempted to arrest the Defendant before they reached the trailhead, the Defendant "demonstrated a great amount of strength" compared to the two rangers restraining him and broke free from the rangers,

---

[10] All citations to Ranger Kwaitkowski's affidavit in support of the search warrant are to Document 2 in case no. 3:18-MJ-2011-HBG.

who were grasping his arms.  [Aff. at ¶13]  The rangers chased the Defendant for over three and one-half minutes and had to stun him repeatedly with a TASER in order to handcuff him.  [Aff. at ¶14]  The Defendant continued to resist arrest, despite being stunned multiple times and physically restrained by at least three people.  [Aff. at ¶14]  Finally, the medical staff who treated the Defendant following his arrest believed that he "was detoxifying from a substance based upon him heavily perspiring and appearing pale."  [Aff. at ¶15]

The Court finds that this evidence regarding the Defendant's behavior indicates that he was recently using controlled substances.  Although an individual's nervousness alone is a "weak" and "unreliable indicator" of criminal activity, particularly in the context of a traffic stop, nervousness is a factor that may be considered along with other factors as a part of the totality of the circumstances indicating a crime is afoot.  *United States v. Johnson*, 482 F. App'x 137, 145 (6th Cir. 2012).  Moreover, in addition to nervousness, Defendant's behavior included heavy breathing and unnatural strength, and he was perspiring heavily and appeared pale.  Thus, the Court finds that the Defendant's behavior constitutes more than just nervousness and supports a finding that he was using controlled substances at that time.

Third, the affidavit provides evidence that the Defendant did not want the rangers to look inside his backpack.  Ranger Kwaitkowski states that when he first approached Defendant Hanson at the falls, the Defendant hastily attempted to extinguish a fire, grabbed his backpack and began walking away.  [Aff. at ¶6]  Ranger Kwaitkowski ordered the Defendant to put his backpack down and to keep away from it, because the ranger saw that it contained a knife.  [Aff. at ¶7, 9]  The affidavit relates that Defendant Hanson wanted to get his pants from his backpack, because he was cold; but he declined Ranger Kwaitkowski's offer to get the pants out of the backpack for him.  [Aff. at ¶9]  The Defendant denied that he had anything in the backpack that he did not want

the ranger to see but began breathing heavily and looked away from the ranger at the time he said this. [Aff. at ¶10] The affidavit relates that Defendant Hanson, then, stepped toward his backpack and grabbed it, despite Ranger Kwaitkowki's directing him to stop. [Aff. at ¶9] Even after Ranger Kwaitkowski physically restrained the Defendant, the ranger had to "hold HANSON's arms and make several commands to HANSON to let go of the backpack." [Aff. at ¶9] The Court finds Defendant Hanson's unusually protective stance toward the backpack caused Ranger Kwaitkowski to suspect that the backpack contained contraband; thus, providing a nexus between the suspected criminal activity and the backpack.

Finally, the affidavit relates that based upon Ranger Kwaitkowski's training and experience, he believes the Defendant's behavior (heavy breathing, nervousness, unnatural strength, ability to resist multiple stuns by the TASER, and jogging on the trail) indicated possible drug use. [Aff. at ¶18] Ranger Kwaitkowski also stated, based upon his experience and training, the Defendant's actions in constantly reaching for his backpack and his anxiety and nervousness at the ranger's controlling the backpack indicated that the backpack contained controlled substances or other illegal contraband. [Aff. at ¶17] An officer's training and experience regarding where criminals keep contraband is alone insufficient to provide the nexus between the location to be searched and the crime; however, it is relevant to the probable cause determination. *See United States v. Schultz*, 14 F.3d 1093, 1098 (6th Cir. 1994).

In the instant case, the Court finds that the totality of the circumstances, including the ranger's location of controlled substances and the odor of marijuana among the Defendant's belongings in his car; the Defendant's behavior, including his nervousness, heavy breathing, unnatural strength, perspiring heavily, and appearing pale; the Defendant's marked protectiveness of his backpack; and the ranger's knowledge, based upon his training and experience, that

individuals who have controlled substances in personal containers tend to be protective of those containers, provide probable cause to believe that controlled substances would be found in Defendant Hanson's backpack.

### (2) Particularity

The Defendant argues that the evidence seized pursuant to the search warrant should be suppressed because the description of the items to be seized was not sufficiently particular. He contends that the description should have been limited to marijuana, as opposed to any controlled substance. He maintains that the failure to so limit the search warrant gives the executing officers unlimited discretion to rummage through the Defendant's backpack and seize anything that remotely resembles a controlled substance. As an example of the overbreadth of the search warrant, the Defendant points to the seizure of white powder in a plastic bag stored in a Bisquick box, which turned out to be Bisquick. Accordingly, the Defendant contends that the search warrant is invalid, and the evidence seized during its execution must be suppressed.

The Government responds that the description of items to be seized was as particular as the activity under investigation permitted.

The Fourth Amendment requires that search warrants describe the place to be searched with particularity. U.S. Const. amend. IV. The particularity requirement forecloses the opportunity for a general search and "prevents the seizure of one thing under a warrant describing another" by restricting the discretion of the executing officer. *Marron v. U.S.*, 275 U.S. 192, 196 (1927). "'A general order to explore and rummage through a person's belongings is not permitted. The warrant must enable the searcher to reasonably ascertain and identify the things which are authorized to be seized.'" *United States v. Savoy*, 280 F. App'x 504, 510 (6th Cir.) (quoting *United*

*States v. Cook*, 657 F.2d 730, 733 (5th Cir. 1981)), *cert. denied*, 555 U.S. 1077 (2008). "The particularity requirement eliminates the 'danger of unlimited discretion in the executing officer's determination of what is subject to seizure.'" *Id.* (quoting *United States v. Savoca*, 761 F.2d 292, 298-99 (6th Cir. 1985)). "[T]he degree of specificity required is flexible and will vary depending on the crime involved and the types of items sought." *United States v. Henson*, 848 F.2d 1374, 1383 (6th Cir. 1988). The description of items to be seized pursuant to a search warrant is sufficient "'if it is as specific as the circumstances and the nature of the activity under investigation permit.'" *Id.* (quoting *United States v. Blum*, 753 F.2d 999, 1001 (11th Cir. 1985)).

The instant search warrant incorporates Attachment B, which authorizes the executing officer(s) to seize "[a]ny evidence of controlled substances held in violation of 36 CFR 2.35(b)(2), 21 U.S.C. §§ 841 and 846," among other items [Case No. 3:18-MJ-2011-HBG, Doc. 3, p.4]. The Defendant argues that this should have been limited to marijuana, instead of any controlled substance. However, the affidavit relates that Ranger Kwaitkowski found hash oil, an unknown opaque liquid in a glass bottle with a dropper, the odor of marijuana in a waterproof bag, and an alcohol pad like that used with injections in the Defendant's car. [Aff. at ¶15] The inventory of the Defendant's vehicle indicated that other controlled substances, in addition to marijuana, could be in the Defendant's backpack. Accordingly, the Court finds that Attachment B is sufficiently particular, giving the unique facts of this case.

The Court finds that the affidavit in support of the search warrant in this case provides a nexus between the alleged criminal activity and the Defendant's backpack. Moreover, the Court also finds that the search warrant is sufficiently particular with regard to the items to be seized. Accordingly, the Court finds that the search of the Defendant's backpack pursuant to a

valid search warrant does not violate the Fourth Amendment. The Defendant's Amended Motion to Suppress Evidence [**Doc. 13**] is **DENIED**.[11]

### III.    CONCLUSION

For the reasons set out fully herein, the Court finds no violation of the Speedy Trial Act occurred as a result of the filing of the Information more than thirty days after the Defendant's arrest on Class B misdemeanors. Accordingly, the Defendant's Amended Motion to Dismiss [**Doc. 12**] is **DENIED**. Additionally, the Defendant's *pro se* motion [**Doc. 2**] is **DENIED as moot**. The Court also finds that the Defendant's backpack was searched pursuant to a valid search warrant. Thus, the Defendant's Amended Motion to Suppress [**Doc. 13**] is also **DENIED**. This case remains set for trial on **September 24, 2018**, **at 9:00 a.m.**, before the undersigned United States Magistrate Judge.[12]

IT IS SO ORDERED.

ENTER:

*Bruce Guyton*
United States Magistrate Judge

---

[11] Because the instant search warrant does not violate the Fourth Amendment, the Court need not analyze the applicability of the exclusionary rule and whether the officers acted in good faith reliance on the search warrant, pursuant to *United States v. Leon*, 468 U.S. 897, 909 (1984), as discussed in the Government's Response.

[12] The Defendant must notify the Court of whether he is requesting a jury on or before **September 10, 2018**.