UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| JOHN WILLIAM HANSON, III, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Nos.: 3:21-CV-390-TAV-JEM |
| | ) | 3:18-CR-61-JEM |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## REPORT AND RECOMMENDATION

Before the Court is a *pro se* Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 [Doc. 1 ("Petition")], filed by John William Hanson, III ("Petitioner"), on November 17, 2022.[1] This case was initially assigned to Magistrate Judge H. Bruce Guyton, and later reassigned to the undersigned [Doc. 2]. On June 2, 2022, pursuant to 28 U.S.C. § 137, Chief United States District Judge Travis R. McDonough assigned this matter to United States District Judge Thomas A. Varlan for all further proceedings [Doc. 7]. District Judge Varlan subsequently referred to the Petition to the undersigned for a report and recommendation [Doc. 8].

In 2018, Petitioner was charged with multiple petty offenses in Case No. 3:18-po-53 and was later charged with two misdemeanors in Case No. 3:18-cr-61, including the Class A misdemeanor of resisting arrest in violation of 18 U.S.C. § 111(a)(1). Petitioner consented to have all charges tried together before United States Magistrate Judge H. Bruce Guyton [Case No. 3:18-cr-61, Doc. 8]. Judge Guyton presided over the trial, and a jury decided Petitioner's guilt solely as to the resisting-arrest misdemeanor offense. Petitioner was convicted

---
[1] Unless otherwise indicated, all citations to the record are found on the docket of Case No. 3:21-CV-390-TAV-JEM.

at trial and was sentenced to an aggregate term of 10 months' imprisonment, followed by one year of supervised release [Case No. 3:18-cr-61, Doc. 30]. Petitioner unsuccessfully appealed his convictions to the district court [Case No. 3:18-po-53, Doc. 37; Case No. 3:18-cr-61, Doc. 67]. Petitioner completed his sentence in its entirety prior to his convictions becoming final, and he filed his 28 U.S.C. § 2255 motion on November 17, 2021 [Doc. 1]. The Court reviewed the Petition and issued an order on February 15, 2022, directing the Government to file an answer or other response within forty-five (45) days, as it did not plainly appear from the face of the motion that it should be summarily dismissed [Doc. 3]. The Government responded on April 1, 2022 [Doc. 4]. Petitioner filed replies on May 2, 2022 [Doc. 5], and on May 4, 2022 [Doc. 6].[2] The Court has reviewed the parties' filings and the background of this matter and finds an evidentiary hearing is unnecessary for disposition of Petitioner's motion and this matter as a whole. For the reasons set forth herein, the Court **RECOMMENDS** that Petitioner's motion [**Doc. 1**] be **DENIED** and that no certificate of appealability be issued.

I. BACKGROUND

In early February 2018, National Park Service Ranger Leszek Kwiatkowski ("Ranger Kwiatkowski") responded to reports of an orange vehicle driving the wrong way down a road in the Great Smoky Mountains National Park [Case No. 3:18-cr-61, Doc. 70 p. 32]. Ranger Kwiatkowski found an unoccupied vehicle matching that description in a parking lot along the road, noticed a dog leash in plain view within the vehicle, and observed dog tracks on the nearby trail—although signs in the area indicated that dogs were not permitted on that trail [*Id.* at 32–33,

---

[2]  The replies are nearly identical to each other excluding the fact that they were received two days apart and in different envelopes. Therefore, unless otherwise indicated, all citations to Petitioner's Reply refer to the May 2, 2022 filing [Doc. 5]. The Court has, however, reviewed both replies in rendering this report and recommendation.

36–40]. Ranger Kwiatkowski had previously been informed by park visitors that there were unrestrained dogs on the trail [*Id.* at 33].

Ranger Kwiatkowski traveled roughly 2 ½ miles down the trail and saw Petitioner, two unrestrained dogs, and a fire near the base of a tree [*Id.* at 43–44]. Thus, it appeared that Petitioner was violating multiple federal laws and regulations prohibiting pets and fires in certain restricted areas [*Id.* at 42–44]. As Ranger Kwiatkowski approached, Petitioner extinguished the fire, picked up a backpack containing a 12-inch knife with a 7-inch blade strapped onto it, and started walking away [*Id.* at 43–46, 53 (noting that two lighters were also found in Petitioner's pockets, raising the ranger's suspicions concerning the fire at the base of the tree)].

Ranger Kwiatkowski directed Petitioner to stop, set down his backpack, and move back towards him; however, Petitioner initially ignored Ranger Kwiatkowski's instructions [*Id.* at 46]. Eventually, Petitioner set his backpack down and moved a short distance away from it [*Id.* at 46–48]. Petitioner was asked for his name and date of birth, but he provided a false last name and false birth year, causing concerns that he may have been wanted by law enforcement [*Id.* at 52].

Petitioner stated he was cold and wanted to get pants from his backpack [*Id.* at 48]. Ranger Kwiatkowski told Petitioner he had seen the knife on the backpack, and he directed Petitioner to leave it alone [*Id.*]. Petitioner continued to ignore Ranger Kwiatkowski's commands, walked over towards the backpack, and picked it up again [*Id.*]. Ranger Kwiatkowski—concerned that Petitioner would retrieve the knife—pushed Petitioner to the ground to gain control of his movement and then helped him stand up [*Id.* at 48–49]. Petitioner refused to release the backpack, but Ranger Kwiatkowski was able to pull it away from him [*Id.* at 49]. Petitioner was "showing a high energy level" and appeared to be "under the influence of some kind of drug." [*Id.* at 53]. Ranger Kwiatkowski carried Petitioner's backpack as they hiked back to the parking lot with the

3

two dogs in tow [*Id.* at 55, 57–58]. During the return trip, National Park Service Ranger Dylan Jones ("Ranger Jones") joined Petitioner and Ranger Kwiatkowski [*Id.* at 58, 118]. Petitioner was hiking "very quickly" and appeared to be "trying to outpace" the rangers, even though they repeatedly directed him to slow down [*Id.* at 57–58].

When they neared the parking lot, the rangers attempted to arrest Petitioner by simultaneously grabbing both of his arms [*Id.* at 58–59, 123–24]. Petitioner resisted arrest, "violently struggle[d]," and "lowered his center of gravity," broke free, and ran through the woods, stopping beside his vehicle [*Id.* at 59–61]. The rangers chased Petitioner for nearly four minutes and tased him several times before placing handcuffs on him with assistance from bystanders [*Id.* at 64–67, 77–78, 128–33]. Petitioner continued resisting arrest with a "high level of strength" and an "extremely high" level of energy [*Id.* at 69, 74–75].

After being handcuffed, Petitioner appeared to suffer a seizure lasting at least ten seconds [*Id.* at 61–62]. Ranger Jones—a trained paramedic—prepared to administer an anti-seizure medication, but the seizure subsided, and Petitioner then reported a history of seizures, leading to him being flown to a hospital for medical evaluation [*Id.* at 61–62, 136]. Upon arriving at the hospital, roughly one hour after being arrested, the rangers noticed that the leg shackles that had been placed on Petitioner were missing [Case No. 3:18-cr-61, Doc. 71 pp. 22–23]. The rangers took turns accompanying Petitioner while he was in the hospital; however, the rangers had to repeatedly handcuff Petitioner because the handcuffs kept being unlocked or removed when they were not watching [*Id.* at 6–12, 22–24].

The following day, National Park Service Ranger Kent Looney ("Ranger Looney") discovered that Petitioner had concealed a handcuff key in his groin area and had been repeatedly unlocking the handcuffs [*Id.* at 6, 13]. Meanwhile, Ranger Jones had conducted an inventory

4

search of Petitioner's vehicle and found what he suspected was marijuana hash oil as well as Petitioner's driver's license, revealing he was someone other than who had claimed to be [Case No. 3:18-cr-61, Doc. 70 pp. 137–40]. Hanson was later charged with six (6) petty offenses [Case No. 3:18-po-53, Doc. 1].

Ranger Kwiatkowski later obtained and executed a warrant to search Petitioner's backpack, which contained 5.7 grams of a green leafy substance suspected to be marijuana [Case No. 3:18-cr-61, Doc. 70 pp. 85–87]. Forensic testing was performed on the substance, and the National Park Service learned in April 2018 that the substance was marijuana [Case No. 3:18-cr-61, Doc. 27-1 (Lab Report)].

On May 9, 2018, the Government filed an information charging Petitioner with the two misdemeanor offenses of forcibly resisting arrest, opposing, impeding, and interfering with a federal officer, in violation of 18 U.S.C. § 111(a)(1), and possessing marijuana, in violation of 36 C.F.R. § 2.35(b)(2) [Case No. 3:18-cr-61, Doc. 1 (Information)]. Petitioner was arraigned on those charges in June 2018 [Case No. 3:18-cr-61, Doc. 76 pp. 1–20; Doc. 87 p. 2]. Petitioner moved to dismiss the information as allegedly violating the Speedy Trial Act and to suppress the marijuana found in his backpack [Case No. 3:18-cr-61, Docs. 12 & 13]. Judge Guyton denied both motions, as the Speedy Trial Act was not implicated and a valid search warrant authorized the search of the backpack [Case No. 3:18-cr-61, Doc. 24].

Petitioner also sought to exclude evidence that he "was caught with a Handcuff Key and attempted to remove his Handcuffs" while in the hospital, arguing that such evidence was inadmissible under Fed. R. Evid. 404(b) [Case No. 3:18-cr-61, Doc. 26]. The Government responded that the evidence was not 404(b) evidence because Petitioner first unlocked and removed his restraints within an hour after his arrest and continued to do so repeatedly, indicating

5

a continuous pattern of interfering with the rangers' efforts to keep him in custody [Case No. 3:18-cr-61, Doc. 30]. Alternatively, the Government argued the evidence was admissible under Rule 404(b) to prove his intent, preparation, and plan to hinder law enforcement from arresting him [*Id.*]. Judge Guyton found that evidence concerning the handcuff key and Petitioner's use of it was admissible at trial for the limited purpose of showing intent [Case No. 3:18-cr-61, Doc. 36].

Upon Petitioner's consent, all of the charges were tried together before Judge Guyton with a jury deciding his guilt only as to the Class A misdemeanor of resisting arrest [Case No. 3:18-cr-61, Doc. 8]. Petitioner was convicted on all charges excluding one petty offense that had previously been dismissed by the Government [Case No. 3:18-cr-61, Doc. 71 pp. 86–92]. Petitioner unsuccessfully sought a judgment of acquittal or a new trial in regard to the resisting-arrest misdemeanor offense [Case No. 3:18-cr-61, Doc. 60]. Petitioner was sentenced to 10 months' imprisonment and one year of supervised release [Case No. 3:18-cr-61, Doc. 67].

Petitioner appealed to the district court, which affirmed the convictions [Case No. 3:18-cr-193, Doc. 33]. Petitioner subsequently appealed to the Sixth Circuit Court of Appeals, which affirmed the convictions as well. *United States v. Hanson*, Nos. 19-5614/5615, 2020 U.S. App. LEXIS 12012 (6th Cir. Apr. 15, 2020). No petition for a writ of certiorari was filed; thus, Petitioner's convictions became final on September 14, 2020. *Clay v. United States*, 537 U.S. 522, 532 (2003) (explaining that where no petition for a writ of certiorari is filed, a conviction becomes final at the expiration of the period for doing so); *see also* Supreme Court, Miscellaneous Order (Mar. 19, 2020), https://www.supremecourt.gov/orders/courtorders/031920zr_d1o3.pdf ("In light of the ongoing public health concerns relating to COVID-19 . . . the deadline to file any petition for a writ of

certiorari due on or after the date of this order is extended to 150 days from the date of the lower court judgment . . . .").

More than a year later, on November 16, 2021, Petitioner filed this § 2255 motion [Doc. 1].[3] The issues have been fully briefed and are ready for disposition by the Court.

## II. ANALYSIS

Section 2255(a) of Title 28 of the United States Code permits a prisoner in custody under sentence of a federal court to move the court that imposed the sentence to vacate, correct, or set aside the sentence, if "the sentence was imposed in violation of the Constitution." In order to obtain relief for an alleged constitutional error, the record must reflect a constitutional error of such magnitude that it "had a substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)). The burden is on the petitioner to establish the claims arising out of the petition. *Bowers v. Battles*, 568 F.2d 1, 5 (6th Cir. 1977). The petitioner has the burden to prove he is entitled to relief by a preponderance of the evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

Petitioner raises several arguments in his § 2255 motion, with most of them centering on disputes with the evidence. For example, Petitioner repeatedly accuses the rangers involved in the events at the Great Smoky Mountain National Park of assault and other improper conduct; Petitioner disputes the circumstances surrounding the handcuff key that was found on his person; and Petitioner attempts to relitigate issues related to his previous suppression motions. In addition,

---

[3] The docket entry for the § 2255 motion indicates it was electronically filed (or docketed) on November 17, 2021; however, the motion is stamped November 16, 2021 [*See* Doc. 1 p. 1].

Petitioner raises many underdeveloped arguments related to trial and courtroom management, the limited role of the jury, and alleged overreach by Judge Guyton.

The Government submits that the Petition should be dismissed for three reasons. First, Petitioner is statutorily ineligible for any relief through a § 2255 motion because Petitioner was not "in custody" when he filed his § 2255 motion [Doc. 4 p. 6]. Second, Petitioner's § 2255 motion is untimely and he has not established that equitable tolling should apply to his case [*Id.* at 7]. Third, Petitioner's claims are unreviewable because they are procedurally defaulted or previously litigated [*Id.* at 8]. As explained below, the undersigned finds that any one of the Government's three arguments would serve as an appropriate basis to dismiss the Petition.

### A. Petitioner is Statutorily Ineligible for Relief, As He Was Not "In Custody" When he Filed his § 2255 Motion

It is well established in the Sixth Circuit that "courts do not consider the merits of § 2255 motions filed by persons no longer in custody." *Pilla v. United States*, 668 F.3d 368, 372 (6th Cir. 2012) ("[P]art of the substance of a § 2255 motion is that it is filed by '[a] prisoner *in custody* under sentence of a court established by Act of Congress (emphasis in original)); *Blanton v. United States*, 94 F.3d 227, 231 (6th Cir. 1996) (explaining that a § 2255 motion is generally unavailable when the petitioner has served his sentence completely and thus is no longer "in custody"); *see also United States v. Zack*, No. 98-1526, 1999 WL 96996, at *1 (6th Cir. Feb. 1, 1999) (finding that a petitioner still serving a term of supervised release remains "in custody" for purposes of § 2255 relief). Petitioner completed his custodial sentence on August 30, 2019. *See* Inmate Locator, Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (last accessed on June 13, 2022); *see also Hernandez v. United States*, Nos. 3:18-CV-129, 3:13-CR-014, 2021 WL 1124760, at *3 (E.D. Tenn. Mar. 24, 2021) ("A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or

(2) capable of accurate and ready determination by resort to sources who accuracy cannot be questioned . . . . This rule governs only judicial notice of adjudicative facts." (quoting Fed. R. Evid. 201(a) & (b))). Petitioner's one-year term of supervised release ended exactly one year later, August 30, 2020 [*See* Doc. 1 p. 3 (stating that Petitioner "finish[ed] his maximum year of probation")].

Petitioner did not file his § 2255 motion until November 16, 2021, more than a year later, when he was no longer "in custody" for purposes of securing § 2255 relief [Doc. 1]. The Court agrees with the Government that Petitioner's § 2255 motion would have been appropriately filed had it been filed *prior* to Petitioner completing his supervised release, *Hampton v. United States*, 191 F.3d 695, 697 (6th Cir. 1999); however, that is not what occurred here. Petitioner completed his sentence, including the one-year term of supervised release, before filing his § 2255 motion, so the plain language of the statute bars any relief. 28 U.S.C. § 2255(a) ("A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released . . . may move the court which imposed the sentence to vacate, set aside, or correct the sentence.").

Accordingly, the undersigned finds Petitioner is ineligible for § 2255 relief, as he was not "in custody" at the time he filed his § 2255 motion.

### B. Petitioner's § 2255 Motion Is Untimely, and Petitioner Has Not Established that Equitable Tolling Applies to this Case

Petitioner's § 2255 motion is untimely. A one-year period of limitation applies to § 2255 motions and typically runs from the date on which the judgment of conviction becomes final—in other words, "at the conclusion of direct review." *Johnson v. United States*, 246 F.3d 655, 657 (6th Cir. 2001). In Petitioner's case, judgment became final on September 14, 2020, upon expiration of time for Petitioner to seek certiorari. Petitioner then had one year, until September

14, 2021, to timely file a § 2255 motion. However, Petitioner did not file his § 2255 motion until November 16, 2021 [Doc. 1].

Petitioner claims he submitted his § 2255 motion to the Court via certified mail ("Receipt Number 7020 0090 00008770 3234") on September 10, 2021—prior to the expiration of the statute of limitations [Doc. 1 p. 13]. He references a "Picture attached," but no such picture is attached [*Id.*]. And the tracking number Petitioner provided refers to a mailing delivered to Cincinnati, Ohio, not this Court. *See* USPS Tracking, https://tools.usps.com/go/TrackConfirmAction_input (last accessed May 25, 2022); *see also Hernandez*, 2021 WL 1124760, at *3 (explaining circumstances under which a court can take judicial notice).

In any case, the one-year statute of limitations for § 2255 motions is not a jurisdictional bar and may be tolled under limited, extraordinary circumstances. *Jones v. United States*, 689 F.3d 621, 626–27 (6th Cir. 2012); *Dunlap v. United States*, 250 F.3d 1001, 1007 (6th Cir. 2001). As explained by the Sixth Circuit Court of Appeals:

> Equitable tolling is used sparingly and "only if two requirements are met. First, the petitioner must establish that he has been pursuing his rights diligently. And second, the petitioner must show that some extraordinary circumstance stood in his way and prevented timely filing."

*Jones*, 689 F.3d at 627 (quoting *Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 749 (6th Cir. 2011) (omitting citations and internal quotation marks)); *Jurado v. Burt*, 337 F.3d 638, 642 (6th Cir. 2003) (explaining that equitable tolling typically "applies only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control"). The petitioner bears the burden of establishing that equitable tolling applies to his case. *Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004). Petitioner's burden is considerable, as "[a]bsent compelling equitable considerations, a court should not extend limitations by even a single day."

*Jurado*, 337 F.3d at 643 (quoting *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560 (6th Cir. 2000)).

In his reply, Petitioner makes vague assertions to "extraordinary circumstances" existing within his case such that the one-year statute of limitations should be equitably tolled [Doc. 5 p. 18]. Petitioner fails to elaborate on this point. Petitioner also argues that he should not be subjected to the statute of limitations because of alleged "false evidence" utilized by the Government at trial, but again, Petitioner's argument is vague and unsubstantiated [*Id.* at 16–17]. The Court has also considered Petitioner's status as a *pro se* litigant, but that will not clear the burden to establish the appropriateness of equitable tolling in this case. *Hall*, 662 F.3d at 751 (finding that a petitioner's *pro se* status and limited law-library access do not change the analysis).

The undersigned finds that Petitioner's § 2255 motion must also be dismissed for being untimely filed, and Petitioner has failed to establish that equitable tolling of the statute of limitations is appropriate in this case.

### C. Petitioner's Claims Are Unreviewable, as they Are Procedurally Defaulted or Previously Litigated

The undersigned finds Petitioner's claims are unreviewable because they are procedurally defaulted or previously litigated. Petitioner contends he was a victim of a "staggering" "number of constitutional violations . . . during his arrest," and that he was "protect[ing] himself" and "trying to safely secure his pets" rather than resisting arrest [Doc. 1 pp. 3, 6–8, 11–14]; that his speedy-trial rights were violated [*id.* at 4, 9]; that the Court erred by allowing evidence at trial related to Petitioner's possession and use of a handcuff key [*id.* at 4, 14]; and that the Court erred by "formatting" the trial as a simultaneous bench and jury trial as opposed to submitting all of the charges to the jury [*id.* at 4–6, 10]. Petitioner raised the latter three of these claims on appeal, and they were rejected. *Hanson*, 2020 U.S. App. LEXIS 12012, at *4–9. Moreover, the Sixth Circuit

found sufficient evidence to sustain Petitioner's conviction for resisting arrest, contradicting Petitioner's claim of lawful self-defense. *Id.* at *3–4.

Petitioner disagrees with the Sixth Circuit's findings; however, a § 2255 motion cannot be used to relitigate issues already decided on appeal, absent exceptional circumstances such as an intervening change in the law. *Wright v. United States*, 182 F.3d 458, 467 (6th Cir. 1999); *DuPont v. United States*, 76 F.3d 108, 110–11 (6th Cir. 1996). Petitioner has failed to identify any exceptional circumstances. On collateral review, the petitioner must "clear a significantly higher hurdle than would exist on direct appeal" and establish a "fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998). The Court finds Petitioner has made no such showing here.

Furthermore, any new challenge raised by Petitioner regarding the legality of his arrest are procedurally defaulted, as he did not raise them on appeal. Aside from a claim of ineffective assistance of counsel, any claim first raised in a § 2255 motion is procedurally defaulted. *Massaro v. United States*, 538 U.S. 500, 504 (2003).

For all of these reasons, the undersigned finds Petitioner's § 2255 motion is not well taken.

### III. CERTIFICATE OF APPEALABILITY

The Court may issue a certificate of appealability only when a petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this showing, the petitioner must demonstrate that reasonable jurists would find the Court's assessment of those claims "debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The undersigned finds that reasonable jurists would not find that dismissal of Petitioner's claims is

debatable or wrong. The undersigned therefore **RECOMMENDS** no certificate of appealability be issued to Petitioner.

IV. **CONCLUSION**

For the reasons expressed herein, the undersigned **RECOMMENDS**[4] that Petitioner's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 [**Doc. 1**] be **DENIED** and that no certificate of appealability be issued.

Respectfully submitted,

*/s/ Jill E. McCook*
Jill E. McCook
United States Magistrate Judge

---

[4] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Federal Rule of Civil Procedure 72(b). Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 153-54 (1985). "[T]he district court need not provide *de novo* review where objections [to the Report and Recommendation] are '[f]rivolous, conclusive or general.'" *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir.1982)). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).